IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIN-CHUNG YANG, and MIAOTANG WANG YANG,<br><br>    Plaintiffs,<br><br>  v.<br><br>SWISSPORT USA, INC., *et al.*,<br><br>    Defendants.<br>_____/<br>NEW HAMPSHIRE INSURANCE COMPANY,<br><br>    Plaintiff-in-Intervention,<br><br>  v.<br><br>SWISSPORT USA, INC., *et al.*,<br><br>    Defendants.<br>_____/ | No. C 09-03823 SI<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT AND REMANDING CASE TO THE SUPERIOR COURT FOR THE COUNTY OF SAN FRANCISCO** |

    Plaintiffs have filed a motion for leave to file a second amended complaint and to remand this case to the Superior Court for the County of San Francisco. The motion is set for a hearing on July 9, 2010. Pursuant to Civil Local Rule 7-1(b), the Court finds the matter appropriate for resolution without oral argument and hereby VACATES the hearing. The Court also VACATES the case management conference scheduled for July 9, 2010. For the reasons set forth below, the Court GRANTS plaintiffs' motion to amend the complaint and REMANDS this case to the Superior Court for the County of San Francisco.

**BACKGROUND**

    This action arises out of an accident at San Francisco International Airport ("SFO"), in which plaintiff Lin-Chung Yang, a California citizen and a ramp mechanic for EVA Airways Corporation

("EVA Air"), became pinned beneath an aircraft and lost one of his legs. Plaintiffs allege that on August 18, 2008, shortly before 1:54 a.m. at SFO, employees of defendant Swissport USA, Inc. ("Swissport") were conducting a "pushback operation" for an EVA Air Boeing 777. Proposed Second Amended Complaint ("SAC") ¶ 11.[1] "Pushback" is the action of moving the aircraft from its position at the gate onto a taxi lane or taxiway in order for the aircraft to proceed under its own power. *Id*. The pushback procedure generally involves a motorized vehicle called a "paymover," and a "towbar," a mechanical device that attaches to the paymover to allow it to connect to the aircraft. *Id*. Plaintiffs allege that Swissport owned and maintained both the paymover and towbar. *Id.*

At the time of the accident, plaintiff Lin-Chung Yang was an EVA Air ramp mechanic, and he was responsible for ensuring that the airline's aircraft were fit for flight and protecting them from damage. *Id*. ¶ 12. Plaintiffs allege that at some point, Swissport employees were having difficulty dislodging the towbar from the plane's nose gear, and that as the EVA Air employee responsible for ensuring that no damage occurred to the plane in the course of the pushback, Yang proceeded to assist the Swissport employees. *Id.*

According to plaintiffs, Swissport ground crew employees were under pressure for an on time departure. *Id*. ¶ 13. As a result of this pressure, the Swissport ground crew employees removed the aircraft's wheel locks in order to straighten the aircraft out before making another attempt at dislodging the towbar. Swissport employee Frank Todaro was the "headset operator" responsible for communicating with the EVA Air flight crew, and he allegedly instructed the crew to release the plane's parking brakes to allow towing. *Id*. After the plane was repositioned by Ben Banzon, the paymover operator, plaintiff resumed his efforts to assist in dislodging the towbar. *Id.* However, plaintiffs allege that unbeknownst to Yang at the time, Todaro negligently omitted to instruct the flight crew to reapply the parking brakes as required by Swissport's safety manual. *Id.* According to plaintiffs, as a result of Todaro and Banzon's negligence, when the towbar subsequently detached from the nose gear and fell to the ground, the plane's wheel lurched forward, pinning plaintiff underneath, amputating his leg above the knee. *Id.*

---

[1] The amended complaint contains little detail regarding the accident. The factual allegations are taken from the proposed second amended complaint.

2

1    On July 1, 2009, Yang and his wife, Miaotang Wang Yang, both California residents, filed an
2 amended complaint in San Francisco Superior Court alleging claims for negligence and loss of
3 consortium against Swissport. Swissport, a Delaware corporation with its principal place of business
4 in Virginia, timely removed the case to this Court, asserting jurisdiction based on diversity of
5 citizenship. On May 4, 2010, the Court granted an unopposed motion filed by EVA Air's workers'
6 compensation insurer, New Hampshire Insurance Company, a Pennsylvania corporation, to intervene
7 as a plaintiff. The amended complaint also named "Doe defendants 1-10," and stated that the Doe
8 defendants were the agents or employees of Swissport and that their "capacities are unknown to
9 plaintiff." Amend. Compl. ¶ 6.

10   Plaintiffs now seek to amend the complaint to add Todaro and Banzon as defendants. Plaintiffs
11 assert that when they filed the amended complaint, "plaintiffs were aware only that Swissport employees
12 negligently handled the pushback operation; accordingly they named Swissport as the defendant.
13 However, Plaintiffs recently learned the full extent of the additional defendants' reckless conduct" after
14 reviewing more than 2,000 pages of discovery documents. Motion at 5:16-19. Plaintiffs assert that
15 minutes of an August 22, 2008 meeting between EVA Air and Swissport representatives describe
16 Todaro and Banzon's roles in the accident and their violation of Swissport's standard safety and
17 operating procedures. Plaintiffs also rely on National Transportation Safety Board ("NTSB") records
18 documenting a Swissport station manager's admission that the handling of the pushback operation was
19 "not in accordance with established operation procedures." Label Decl. ¶ 6. In addition, plaintiffs assert
20 that the OSHA investigative report that followed the accident indicated greater recklessness on the part
21 of Todaro and Banzon than plaintiffs had previously been aware.

22   Plaintiffs also seek to add Hall Industries, Inc. and Clyde Machines, Inc., as defendants.
23 Plaintiffs' motion to amend states that plaintiffs have learned that the towbar mechanism that plaintiff
24 was attempting to dislodge at the time of his accident became stuck as a result of defects in its
25 manufacture, design, instructions, warnings, testing, and/or installation, and that the towbar was
26 manufactured by Hall Industries, Inc. *See* Label Reply Decl. Ex. A (photograph of towbar with "Hall
27 Industries, Inc." printed on it). In opposition to the motion, Swissport has submitted the declarations
28 of two Swissport employees who state that the towbar involved in the accident was manufactured by

3

Clyde Machines, Inc. ("Clyde Machines"), not Hall Industries. *See* Geddes Decl. ¶ 4; Carr Decl. ¶ 2.[2] As a result of the factual dispute surrounding the manufacturer's identity, plaintiffs now seek to join as defendants both Hall Industries, Inc., a Pennsylvania corporation, and Clyde Machines, a Minnesota corporation.

Plaintiffs seek to allege claims for negligence and willful and wanton conduct against Todaro and Banzon, and claims for negligent and strict products liability against Hall Industries and Clyde Machines. As the joinder of Todaro, Banzon, or Hall Industries would destroy diversity jurisdiction, plaintiffs have also moved the Court to remand this case to the San Francisco County Superior Court pursuant to 28 U.S.C. § 1447(e). Defendant Swissport opposes plaintiffs' motion, while plaintiff-in-intervention New Hampshire Insurance Company has filed a notice of non-opposition.

## LEGAL STANDARD

28 U.S.C. § 1447(e) provides, "If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." "Congress added subsection (e) to § 1447 with the purpose of taking advantage of the opportunity opened by removal from a state court to permit remand if a plaintiff seeks to join a diversity-destroying defendant after removal." *IBC Aviation Servs., Inc. v. Compania Mexicana de Aviacion, S.A. de C.V.*, 125 F. Supp. 2d 1008, 1011 (N.D. Cal. 2000) (citing H.R. Rep. No. 100-889, at 72-73).

Whether to permit joinder under § 1447(e) remains an issue of sound discretion for the Court. *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 691 (9th Cir. 1998); *IBC*, 125 F. Supp. 2d at 1011; *Clinco v. Roberts*, 41 F. Supp. 2d 1080, 1082 (C.D. Cal.1999). Generally, however, when weighing whether to permit joinder, a court should consider (1) whether the party plaintiff seeks to join is required for just adjudication and would be joined under Fed. R. Civ. P. 19(a); (2) whether the statute of limitations would bar an action against defendant in state court; (3) whether the joinder is untimely, or there has

---

[2] In response to the photograph of the towbar submitted in connection with plaintiffs' reply, defendant filed an administrative motion to submit the rebuttal declaration of Patricia Carr. The Court GRANTS defendant's motion for administrative relief and has considered the Carr declaration in deciding the instant motion. (Docket No. 44).

4

been an unexplained delay in its request; (4) whether joinder is intended solely to destroy diversity jurisdiction, (5) whether the claims against the new defendants appear valid; and (6) whether denial of joinder will prejudice the plaintiff. *IBC*, 125 F. Supp. 2d at 1011 (citing *Palestini*, 193 F.R.D. 654, 658 (S.D. Cal. 2000)). Any of the factors might prove decisive, and none is an absolutely necessary condition for joinder.

## DISCUSSION

### I. Joinder of Todaro and Banzon[3]

#### A. Federal Rule of Civil Procedure 19(a)

Defendant contends that Todaro and Banzon should not be joined as defendants because they are not necessary parties under Federal Rule of Civil Procedure 19(a). Rule 19(a) requires joinder of persons whose absence would preclude the grant of complete relief, impede their ability to protect their interests, or subject a party to the risk of incurring inconsistent obligations. Fed. R. Civ. P. 19(a); *IBC*, 125 F. Supp. 2d at 1011. A necessary party is one having an interest in the controversy, and who ought to be made party to the action to enable the court to do complete justice and adjudicate the rights of parties accordingly. "This standard is met when failure to join will lead to separate and redundant actions [in different forums]." *IBC*, 125 F. Supp. 2d at 1012 (citing *CP Nat'l Corp. v. Bonneville Power Admin.*, 928 F.2d 905, 912 (9th Cir. 1991)). "Although courts consider whether a party would meet Fed. R. Civ. Proc. 19's standard for a necessary party, amendment under § 1447(e) is a less restrictive standard than for joinder under Fed. R. Civ. Proc. 19." *IBC*, 125 F. Supp. 2d at 1011-12. Courts will prevent joinder of non-diverse defendants where the proposed defendants "are only tangentially related to the cause of action or would not prevent complete relief." *Id.* at 1012 (citing *Red Buttons v. Nat'l Broad. Co.*, 858 F. Supp. 1025, 1027 (C.D. Cal. 1994)).

Here, plaintiffs allege that Todaro and Banzon's negligence and reckless disregard of company safety procedures caused, in part, plaintiffs' injuries. Thus, the claims against Todaro and Banzon are more than just tangentially related to those pending against Swissport, and accordingly weigh in favor

---

[3] The arguments and issues regarding joinder of Todaro and Banzon differ somewhat from those related to the joinder of Hall Industries and Clyde Machines, and thus Court separately analyzes the joinder of the two sets of defendants.

5

of joinder. In addition, plaintiffs argue that if Swissport is not subjected to punitive damages, joinder of Todaro and Banzon is necessary to ensure a full recovery.

### B. Statute of limitations

Defendant also contends that joinder is unnecessary because the statute of limitations on plaintiffs' claims against Todaro and Banzon has not yet expired, and therefore plaintiffs can file a separate action against those defendants in state court. Generally, if a statute of limitations does not bar a plaintiff from filing suit in state court, a federal court may be less inclined to permit joinder of a non-diverse defendant because the plaintiff could still theoretically seek relief from state court. *See Clinco*, 41 F. Supp. 2d at 1083. But where, as here, a plaintiff would be required to litigate essentially duplicative federal and state lawsuits arising out of the same facts, the interest in conserving judicial resources and the risk of inconsistent results weighs in favor of allowing joinder. *See IBC*, 125 F. Supp. 2d at 1012.

### C. Untimely joinder

Defendant also contends that joinder is untimely because plaintiffs' motion to amend was filed nine months after removal. Defendant relies on *Lopez v. General Motors Corp.*, 697 F.2d 1328 (9th Cir. 1983), in which the Ninth Circuit found untimely a motion to amend the complaint and join a non-diverse defendant that was filed six month after removal. However, in *Lopez*, the Ninth Circuit held that the motion was untimely because "[c]ounsel here says that he did try to identify the [non-diverse] dealer who sold the truck, but he never told that to the court, or mentioned the unidentified dealer in his complaint or otherwise until more than six months after the action was removed and just four days before the [defendant's successful] motion for summary judgment was to be heard." *Id.* at 1332.

*Lopez* is distinguishable in several respects. Unlike the plaintiff in *Lopez*, here plaintiffs identified Doe defendants in the first amended complaint, and plaintiffs have provided a reasonable explanation for the delay in seeking to amend. Moreover, in *Lopez* it appeared that the plaintiff sought to amend and remand in order to avoid an adverse summary judgment ruling. In contrast, aside from the instant motion to amend, the only other motion practice in this case has been the unopposed motion

6

to intervene filed by New Hampshire Insurance Company. Defendant contends that litigation has proceeded considerably because discovery has been underway for more than six months and a mediation is scheduled for September 2010. However, no dispositive motions have been filed, and the discovery completed thus far will be relevant whether the case is litigated in this court or state court. In addition, plaintiffs filed their motion to amend before the May 28, 2010 deadline for such motions set in the Court's March 31, 2010 pretrial order.

### D. Motive for joinder

The motive of a plaintiff in seeking joinder of a non-diverse defendant is relevant to a court's decision as to whether to grant leave to amend his original complaint. *Desert Empire Bank v. Ins. Co. of N. Am.*, 623 F.2d 1371, 1376 (9th Cir. 1980) (superseded by 28 U.S.C. § 1447(e) (1996)); *IBC*, 125 F. Supp. 2d at 1012. The joinder of non-diverse defendants for the sole purpose of divesting a federal court of diversity jurisdiction is improper. *IBC*, 125 F. Supp. 2d at 1012. However, "[s]uspicion of diversity destroying amendments is not as important now that § 1447(e) gives courts more flexibility in dealing with the addition of such defendants." *Id*.

Here, plaintiffs have provided facially legitimate grounds for amendment, and the Court finds nothing in the record to suggest that plaintiffs have an improper motive in seeking to add additional defendants.

### E. Merit of claims

Defendant contends that plaintiff does not have any valid claims against Todaro and Banzon. In analyzing joinder of Todaro and Banzon, the Court must determine "whether the claim[s] sought to be added seem[] meritorious." *IBC*, 125 F. Supp. 2d at 1012; *see also Clinco*, 41 F. Supp. 2d at 1083; *Goodman v. Travelers Ins. Co.*, 561 F. Supp. 1111, 1113-14 (N.D. Cal. 1983). Plaintiffs seek to allege claims against Todaro and Banzon for negligence and willful and wanton conduct. Under California law, the elements of a negligence claim are: "(1) defendant's obligation to conform to a certain standard of conduct for the protection of others against unreasonable risks (duty); (2) failure to conform to that standard (breach of duty); (3) a reasonably close connection between the defendant's conduct and

7

resulting injuries (proximate cause); and (4) actual loss (damages)." *Corales v. Bennett*, 567 F.3d 554, 572 (9th Cir. 2009) (quoting *McGarry v. Sax*, 70 Cal. Rptr. 3d 519, 530 (Cal. Ct. App. 2008)) (internal quotations omitted).

Plaintiffs allege that as employees of Swissport, Todaro and Banzon owed plaintiffs a duty to adhere strictly to Swissport's safety procedures for pushback operations; that Todaro and Banzon breached this duty by failing to instruct the EVA Air flight crew to re-apply the Boeing 777's breaks; and that this omission proximately caused the amputation of plaintiff's leg. Plaintiffs also claim to have obtained evidence through discovery that corroborates their allegations. On this record, the Court finds that plaintiffs may have valid negligence claims against Todaro and Banzon. The Court finds it unnecessary to decide whether plaintiffs may have a valid claim for willful and wanton conduct.

### F. Prejudice to plaintiff

Finally, a court must consider whether significant prejudice to plaintiff would result from the denial of joinder. Courts have found significant prejudice where claims against proposed non-diverse defendants are so intimately connected to those against an original defendant that denial of joinder would force a plaintiff to choose whether to pursue redundant litigation in another forum at the risk of inconsistent results, or forego valid claims against the non-diverse defendants. *See IBC*, 125 F. Supp. 2d at 1013. The Court finds that these circumstances are present here, and that plaintiffs would be prejudiced by the denial of joinder.

Weighing the six factors collectively, the Court finds that permitting the diversity-destroying joinder of Todaro and Banzon is appropriate. The issues arising out of plaintiffs' claims against Todaro and Banzon are identical to those against Swissport, and joinder would thus conserve judicial resources and avoid the risk of inconsistent results in different forums. Plaintiffs' motion to amend was not unreasonably delayed or untimely and was filed before the deadline set by the Court. In addition, as plaintiffs' negligence claims against Todaro and Banzon appear meritorious, and there is no evidence of an improper motive on the part of plaintiffs.

8

## II. Joinder of Hall Industries, Inc. and Clyde Machines, Inc.

Plaintiffs also seek to join Hall Industries, Inc. and Clyde Machines, Inc., and allege claims for strict and negligent products liability against them. While Clyde Machines is diverse, Hall Industries is non-diverse to plaintiff-intervener New Hampshire Insurance. As the Court has already determined that the diversity-destroying joinder of Todaro and Banzon is appropriate, the Court need only weigh the propriety of permissive joinder under Fed. R. Civ. P. 20. *See Diaz v. Allstate*, 185 F.R.D. 581, 587, 595-96 (C.D. Cal. 1998). Under Rule 20, defendants may be joined if: (1) a right to relief relating to or arising out of the same transaction or occurrence or series of transactions or occurrences is asserted; and (2) some question of law or fact common to all parties arises in the action. *Desert Empire*, 623 F.2d at 1375. "Courts have shown a strong liberality in allowing parties to amend their pleadings when such amendments have satisfied the explicit requirements of [Rule 20]." *Id.* at 1375-76.

Under California law, a plaintiff states a valid claim for strict products liability if he alleges that a defect in the manufacture or design of a product "causes injury while the product is being used in a reasonably foreseeable way." *Soule v. Gen. Motors Corp.*, 34 Cal. Rptr. 2d 607, 612 (Cal.1994). Plaintiffs assert that Yang was injured as a proximate result of Hall Industries and/or Clyde Machines' negligent design and manufacture of the towbar; that the towbar was being used in a foreseeable way; and that Yang was unaware of any defect. Plaintiffs therefore asserts a valid claim for relief. In addition, because plaintiffs allege that Hall Industries, Clyde Machines, Swissport, Todaro and Banzon are all liable for the same injury, the claim arises out of the same transaction or occurrence, thereby satisfying the first prong of Rule 20. Finally, Hall Industries and/or Clyde Machines' alleged responsibility for the accident with Swissport and its employees introduces common questions of law and fact amongst all the defendants. For this reason, the Court grants plaintiffs' motion to amend their complaint to join Hall Industries and Clyde Machinery.[4]

---

[4] The parties have submitted conflicting evidence regarding whether Hall Industries or Clyde Machines manufactured the towbar involved in the accident. At this stage of the litigation, the Court cannot resolve factual disputes, and any such disputes can be litigated in state court.

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby GRANTS plaintiffs' motion for leave to file a second amended complaint. With the addition of non-diverse defendants, this Court lacks jurisdiction over this case, and accordingly this case is REMANDED to the San Francisco County Superior Court. (Docket No. 31, 44).

**IT IS SO ORDERED.**

Dated: July 6, 2010

SUSAN ILLSTON
United States District Judge